**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTY DECARLOS DUNBAR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-245 E |
| | ) | Magistrate Judge Maureen P. Kelly |
| M. BARONE, E.J. WOJCIK, | ) | |
| K.I. GRANLUND, M. OVERMYER, | ) | |
| T. RISKUS, E. MONGELLUZZO, DUNCAN | ) | |
| C. CUSTER, HALL, REITZ, FLOCKERZI, | ) | Re: ECF No. 56 |
| K.P. REISINGER, C. KENNEDY, | ) | |
| ROBERT DOE, and JOHN DOE, | ) | |
| Defendants. | ) | |

## OPINION

Marty DeCarlos Dunbar ("Plaintiff") is a state prisoner who, at the time giving rise to this suit, was housed in the State Correctional Institution at Forest (SCI-Forest). He is serving a sentence of twenty to forty years for convictions of, *inter alia*, rape, robbery and kidnapping.[1]

## I. FACTUAL SUMMARY

Plaintiff has brought this civil rights suit, alleging that his First, Fifth, Eighth and Fourteenth Amendment rights were violated. In the operative Complaint, he named the following Defendants, all of whom worked at SCI-Forest: M. Barone, Superintendent of SCI-Forest; K. L. Granlund, Deputy Superintendent of SCI-Forest; M. Overmyer, Major of the Guard; T. Riskus, Security Captain; E. Mongelluzzo, Security Lieutenant; Duncan, Security Lieutenant; C. Custer, Unit Manager; Hall, Corrections Officer; Reitz, Corrections Officer;

---

[1] The Court takes judicial notice of Plaintiff's criminal trial court docket available at: http://ujsportal.pacourts.us/DocketSheets/CPArchiveReport.aspx?docketNumber=CP-51-CR-0704861-1984 (site last visited 10/11/2011).

Flockerzi, Corrections Officer; K. P. Reisinger, Hearing Examiner;   and  C. Kennedy, Assistant to the Superintendent and Grievance Coordinator  (collectively, "the Moving Defendants").[2]  The Moving Defendants have filed a Motion for Summary Judgment, ECF No. 56, which shall be granted.

Plaintiff complains generally of harassment by the security staff at SCI-Forest.  More specifically he complains about an alleged incident, occurring in May 2008, in which three of the defendants, namely, Corrections Officers Hall, Reitz and Flockerzi, wore pillow cases on their heads in the style of a Ku Klux Klan hood and made gestures with their hands similar to the Nazi salute.   These three Defendants allegedly did this while they were in the office on the unit, while visible to many of the prisoners on the unit.  Plaintiff also complains that he was harassed by his cell being searched, his mail being interfered with and by his legal property being confiscated. Plaintiff also complains of an incident where security staff allegedly falsely charged Plaintiff with a misconduct by accusing him of sexually assaulting another prisoner, which resulted in Plaintiff being found guilty of the misconduct and being placed in disciplinary custody for 540 days.  See ECF No. 47-1 at 68.  Plaintiff alleges that Defendant Reisinger, who conducted the misconduct hearing on the allegedly false charge of sexual assault, did not permit Plaintiff to call any of his witnesses.  Plaintiff alleges that the reason for the security staff doing this was in retaliation for Plaintiff's legal work and for his writing letters to newspapers about the behavior of SCI-Forest security staff.

---

[2] Plaintiff also named Robert Doe and John Doe defendants but he never identified them nor served them.  Hence, they are dismissed as party defendants.  Fontroy v. Toski, Civ.A. No. 06-230E, 2009 WL 229753, at *1 (W.D.Pa. Jan. 30, 2009).   Plaintiff previously withdrew all claims against Defendant Wojcik.  ECF No. 49.

Finally, Plaintiff complains that Defendant Kennedy, as the Grievance Coordinator at SCI-Forest refused to process some of Plaintiff's grievances and that some of the ones she did file, she forwarded to her husband, Lt. Mongelluzzo to answer, when he was the subject of Plaintiff's complaint in the grievance.

## II. PROCEDURAL HISTORY

Plaintiff is proceeding *pro* se and was granted pauper status.   Plaintiff filed the Original Complaint, ECF No. 3, which alleged facts against the various Defendants.  Subsequently, Plaintiff filed a Motion for Leave to Amend the Complaint, ECF No. 29, wherein, he simply sought to clarify that he was suing the Defendants in both their individual and official capacities. The Court granted the motion, and the Amended Complaint was filed.  ECF No. 43.  However, the Amended Complaint failed to allege any facts against the Defendants but merely listed them and described their positions.  In addition, the Amended Complaint included an extensive request for various types of relief.  Because the Amended Complaint makes no factual allegations against the Defendants, the Court deems the Original Complaint, taken together with the Amended Complaint to constitute the Operative Complaint in this case.

Defendants filed a Motion for Summary Judgment, ECF No. 56, a Brief in Support, ECF No. 57, a Concise Statement of Material Facts, ECF No. 58, and an Appendix of Exhibits.  ECF No. 59.  Plaintiff filed his response to the Motion for Summary Judgment.  ECF No. 61.   More recently, Plaintiff filed a Motion for Temporary Restraining Order ("TRO"), ECF No. 63, and then the Moving Defendants filed a Response, ECF No. 66.  Plaintiff also filed a motion requesting a hearing on the TRO.  Because this Court grants the Motion for Summary Judgment filed by the Moving Defendants, the other pending motions filed by Plaintiff are rendered moot.

## III.  STANDARD OF REVIEW - SUMMARY JUDGMENT

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden to show or point out why there is no genuine issue of material fact. Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002).   The manner of carrying this initial burden, varies depending on whether the moving party or the non-moving party bears the burden of proof at trial with respect to the legal issue. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) ("The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.").

In the case at issue, the exhaustion of administrative remedies, one of the affirmative defenses raised by the Moving Defendants, is an issue for which the Moving Defendants bear the burden of proof.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Hence,

> [w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." [*Celotex*] at 331 (Brennan, J., dissenting); *see also Chanel, Inc.*, 931 F.2d at 1477. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. *See id.* at 1477. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id*.; *see also* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th  Cir. 1991) (en banc).

In contrast,

4

> [w]hen the nonmoving party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." Instead, the moving party simply may "'show[ ]'-that is, point[ ] out to the district court –- that there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.  Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. *Id.* at 331 (Brennan, J., dissenting). If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e); *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," *Celotex*, 477 U.S. at 323, the moving party is entitled to summary judgment.

Id., at 1437-38 (footnotes omitted).  In either case, regardless of who bears the burden of proof at trial, the moving party must show no genuine dispute over a material fact.

"The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004)(internal quotations omitted).   The evidence on summary judgment presents a genuine issue of fact only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  As a corollary of this principle from Matsushita, while it is generally true that on summary judgment motions, a court should not resolve credibility issues, nevertheless, where the evidence adduced by a party is so incredible that reasonable minds could not believe it, the court

is not barred from entering summary judgment based on such a record.  <u>Kreimar v. Bureau of Police for Town of Morristown</u>, 958 F.2d 1242, 1250 (3d Cir. 1992) ("[w]hile summary judgment may be based upon affidavits, conflicts of credibility should not be resolved on a hearing on the motion for summary judgment **unless** the opponent's evidence is 'too incredible to be believed by reasonable minds.'") (emphasis added) (*quoting* <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 909 (3d Cir. 1984)).  The inquiry involves determining whether the evidence (other than that which is too incredible to be believed by reasonable minds) presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting <u>Anderson v Liberty Lobby</u>, 477 U.S. at 251-52.   If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50.  In reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention.  <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 403 (6th Cir. 1992).

In short, the motion for summary judgment is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.  <u>See</u> <u>Albiero v. City of Kankakee</u>, 246 F.3d 927, 933 (7th Cir. 2001).

## IV.  DISCUSSION

### A.  Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  There is no dispute that this provision applies herein.

The Moving Defendants point out that Plaintiff failed to exhaust the administrative remedies as to all of his claims except as to two claims, namely: 1) Plaintiff's claim that Defendant Reitz verbally harassed Plaintiff in early June 2008, and 2) that Defendant Reisinger violated Plaintiff's procedural due process rights.  In order to carry their initial summary judgment burden, the Moving Defendants provided a sworn declaration from Dorina Varner, who is the Chief Grievance Officer in the Grievance Review Office, who has personal knowledge of the grievance policies including the three step grievance policy found in Department of Corrections Administrative Directive 804 ("DC-ADM 804").  ECF 59-1 at 2.  In addition, Ms. Varner has access to the computerized database that tracks grievances filed by inmates.  DC-ADM 804 requires that an inmate who has a complaint about anything other than disciplinary custody or administrative custody[3] to file an initial grievance at the institution, and if dissatisfied with the response, file an appeal to the institution's Superintendent or designee and if still dissatisfied, then file an appeal to the Secretary's Office of Inmate Grievances and Appeals. Ms. Varner attests that Plaintiff did not file grievances to final appeal and so did not exhaust his administrative remedies except as to the claim that Defendant Reitz verbally harassed Plaintiff in

---

[3]  DC-ADM 801 provides the mechanism for prisoners to complain about matters relating to being placed in disciplinary custody or administrative custody.  ECF No. 57 at 6 to 7.  The Moving Defendants concede that Plaintiff's claim regarding Defendant Reisinger allegedly denying Plaintiff procedural due process by not permitting him to call his witnesses at his
(footnote continued)

early June 2008.  ECF No. 57 at 6.  This declaration is sufficient for the Moving Defendants to meet their initial summary judgment burden so as to shift the burden to Plaintiff to come forward with evidence that he did exhaust.

In response, Plaintiff argued that "Ms. Kennedy [the Grievance Coordinator at SCI-Forest] refused to process plaintiff's grievances [It must be noted that Ms. Kennedy is married to Defendant Mongelluzzo] [and so] the inmate grievance system was no longer available to him because the inmate grievance system policy (DC-ADM 804) does not provide any instructions or remedies to plaintiff where the grievance officer refuses to process an inmate grievance." ECF No. 61 at 2.    Plaintiff also filed two Declarations. In the first one, he declared that "I, Marty Dunbar, certify that I did submit numerous timely grievances to Ms. Kennedy, SCI-Forest Grievance Officer, and she refused and interfered with processing my grievances.  The Grievance policy does not have a remedy when this occurs."  ECF No. 61 at 8.   In the second Declaration, he averred that "I, Marty Dunbar, hereby certify that I did submit inmate grievances related to each of my claims set forth in my complaint within the time period mandated by the Department's DC-ADM 804 Policy.  All of my grievances went unanswered and the DC-ADM Policy failed to instruct me on what I was to do when the grievance coordinator failed to respond to my grievances."  ECF No. 74.

### (1)  DC-ADM 804 addresses the issue of what to do when no response is provided to a grievance.

Plaintiff is mistaken on several grounds.  First, Plaintiff is mistaken that the DC-ADM 804 does not address the issue of what to do when a grievance official fails to respond to or refuses to process a grievance.  The DC-ADM 804 is explicit in that it states:

---

misconduct hearing was exhausted via the process in DC-ADM 801.  ECF No. 57 at 7 to 8.

2.  The Inmate Grievance System is intended to deal with a wide range of issues, procedures or events that may be of concern to an inmate. . . .

3.  It shall be the responsibility of the Unit Manager or Officer-In-Charge to address written or verbal concerns submitted by an inmate in an expedient manner.  The Unit Manager or Officer-In-Charge shall review the concern, determine a resolution or take other appropriate action.  It is preferable, when possible, to resolve concerns quickly and informally rather than through the official grievance process.  The Unit Manager or Officer-In-Charge shall document the results of the resolution, including the parties involved in the **DC-14, Cumulative Adjustment Record**.

4.  Where an inmate has a concern that he/she is unable to resolve, the inmate is encouraged to **attempt resolution of** the concern informally by use of a **DC-135A**, **Inmate Request to Staff** or direct conversation with the Unit Manager or Officer-In-Charge **prior to submitting a DC-804, Part 1, Official  Inmate Grievance form (Attachment A)**.  Staff who receive verbal or written concerns from an inmate are expected to attempt to resolve any non-frivolous concerns.

. . . .

6.  A grievance must be submitted to the Facility Grievance Coordinator using the DC-804, Part 1.  Every grievance must be signed and dated by the inmate.  Forms will be readily available on all housing units.  All copies, with the exception of the inmate's copy **(GOLDENROD)**, shall be forwarded to the Facility Grievance Coordinator.  The **PINK** copy will be returned to the inmate, acknowledging acceptance of the grievance.

DC-ADM 804 VI.A.1 to 6 (footnote omitted). [4]  Hence, it is clear that "Inmate Grievance System is intended to deal with a wide range of issues, **procedures** or events that may be of concern to an inmate[.]" (emphasis added).  This provision would, by its plain language, include concerns regarding a Grievance Coordinator's alleged failure to process or respond to grievances.  See, e.g., Matthews v. Villella, No. 4:CV-08-0964, 2011 WL 2360217, at *6 (M.D. Pa. May 18, 2011);  McClain, Jr. v. Alveriaz, Civ. No. 07-5551, 2009 WL 3467836, at *7 (E.D.Pa. Oct. 26, 2009).

**(2)   Plaintiff knew what to do when he received no response.**

---

[4] The court takes judicial notice of DC-ADM 804, issued December 1, 2004 and effective January 3, 2005, which was apparently the version in effect at the time that Plaintiff would had to have utilized the grievance procedures in order to exhaust his administrative remedies.  It would be helpful in the future for the Attorney General's Office to provide copies of the correct

(footnote continued)

Secondly, not only does DC-ADM 804 address the issue of what to do if no response was received to a grievance, but Plaintiff's own evidence shows that he knew exactly what to do when a response to a grievance or grievance appeal was not forthcoming -- he followed the procedures outlined in DC-ADM 804 and he filed an "Inmate Request to Staff."  DC-ADM 804 VI.A.4 ("Where an inmate has a concern that he/she is unable to resolve, the inmate is encouraged to attempt resolution of the concern informally by use of a DC-135A, Inmate Request to Staff[.]").  See, e.g., ECF No. 47-1 at 133 (Plaintiff's Inmate Request to Staff directed at Superintendent Barone wherein he complains that "I sent you an appeal for the above grievance on October 28, 2009, along with (2) two of my personal letters with that appeal.  As of the above date, I have not received your response back . . . .").  That Plaintiff did not file any grievances concerning the alleged failure of the Grievance Coordinator, Kennedy, to process his grievances simply constitutes a procedural default of all of his claims against the Grievance Coordinator, Ms. Kennedy and renders his claim that he did in fact file grievances concerning his other claims, suspect, at best, since, if Ms. Kennedy failed to process his grievances as Plaintiff now alleges, one would have expected that there would be a paper trail of Plaintiff filing several Inmate Requests to Staff regarding Ms. Kennedy's not processing his grievances and/or additional grievances concerning same.  Plaintiff produced no such documentation though.

### (3)    Plaintiff's conclusory declaration is insufficient

Thirdly, and more fundamentally, as the Moving Defendants point out, Plaintiff's mere bald assertions that he filed grievances is unavailing for two reasons.

The first reason is that his mere conclusory statement is insufficient to prevent summary judgment from being granted against him.  Instead, he is required to point to facts, i.e., to say

---

version of the DC-ADM 804 which governs the relevant time period in their dispositive motions.

when he filed which grievance and what happened thereafter.  Under Rule 56, it was Plaintiff's

burden as the non-moving party to "set forth **specific** facts showing a genuine issue for trial and

[he] may not rest upon mere allegations, general denials, or…vague statements…." Quiroga v.

Hasbro, Inc. 934 F.2d 497, 500 (3d Cir. 1991) (citation and footnote omitted) (emphasis added).

"Merely to state bald allegations without any substance or description does not defeat summary

judgment." Wright v. Town of Zebulon, No. 4:06-CV-218, 2008 WL 6838583, at *3 (E.D.N.C.

Feb. 25, 2008).

The second reason is that in the record there are Grievances filed by Plaintiff that were in

fact processed and responded to via an Initial Review Response.[5]  Plaintiff's averment that "**All**

of my grievances went unanswered" ECF No. 74, is patently contradicted by the record and need

---

[5] ECF No. 47-1 at 17 to 19 (grievance dated 6/8/2006 complaining that a Sergeant Graham created racial tensions); ECF No. 47-1 at 26 to 27 (grievance dated 6/10/2008 addressed to Ms. Kennedy and acknowledged by her on 6/17/2008, concerning Defendant Reitz allegedly threatening Plaintiff to give up his legal campaign and also allegedly accusing Plaintiff of taking soup off a fellow prisoner, and the grievance was responded to by the Unit Manager, Custer); ECF No.  47-1 at 28 (appeal, dated 6/13/2008, of a grievance concerning Plaintiff's incoming and outgoing mail); ECF No. 47-1 at 29 to 31 (grievance dated 7/1/2008 concerning Defendant Flockerzi allegedly stating that Plaintiff can "run his mouth to security" and in the Initial Review Response, dated 6/30/2008, no evidence was found to support Plaintiff's allegations); ECF No. 47-1 at 54 to 59 (grievance dated 7/9/2010 complaining of Defendants Riskus and Duncan for their falsely (according to Plaintiff) accusing Plaintiff in March 2009 of sexual assault against another inmate and the appeal to the Superintendent dated 7/26/2010 and appeal to Central Office dated 3/6/2010);  ECF No. 47-1 at 76 to 79 & at 136 to 142 (grievance dated 9/11/2009 concerning Plaintiff's complaints about his mail, responded to on 9/18/2009 and Plaintiff's appeal to Central Office, Central Office's remand of the grievance to the Superintendent and the Superintendent's revised response dated 11/10/2009, acknowledging human error in the opening of Plaintiff's legal mail); ECF No. 47-1 at 80 to 83 & at 127 to 134 (grievance dated 10/4/2009 concerning Plaintiff's late receipt of mail on a Sunday and responded to on 10/20/2009; also a response from Defendant Kennedy indicating that an extension of time was granted in which to respond to Plaintiff's grievance; Plaintiff's appeal to the Superintendent and the Superintendent's response and Central Office Response dated  12/15/2009);  ECF No. 47-1 at 84 to 85; 114 to 120 (Plaintiff's grievance appeal, dated 12/21/2009 concerning mail and the Superintendent's response to appeal dated 12/28/2009 and Plaintiff Inmate Request to Staff concerning same).

not be credited.  See Scott v. Harris, 550 U.S. 372, 381 (2007) ("When opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment."); Gardine v. Maxwell, No. 08-6524, 2010 WL 808995, at *5

(S.D.N.Y. March 9, 2010) ("Summary judgment may be granted when a plaintiff's testimony is

largely unsubstantiated by direct evidence and is replete with inconsistencies and improbabilities

that no reasonable juror would undertake the suspension of disbelief necessary to credit the

plaintiff's allegations."), *amended by*, 2010 WL 1541431 (S.D.N.Y. April 15, 2010).  To the

extent that Plaintiff meant to say that all of his grievances **concerning claims made in this case**

went unprocessed, again, Plaintiff's averment is contradicted by the record.  See, e.g.,

> (1) ECF No. 47-1 at 26 to 27 (grievance dated 6/10/2008 addressed to Ms.
> Kennedy and acknowledged by her on 6/17/2008, concerning Defendant Reitz
> allegedly threatening Plaintiff to give up his legal campaign and also allegedly
> accusing Plaintiff of taking soup off a fellow prisoner, and the grievance was
> responded to by the Unit Manager, Custer) which grievance corresponds to
> Plaintiff's complaint in this civil action that "I complain[ed] to him [i.e.,
> Superintendent Barone] about haveing [sic] some very serious problems with the
> defendants that I better stop my legal campaign")  ECF No. 3 at 3, ¶ IV.C;
> (2) ECF No.  47-1 at 28 (appeal, dated 6/13/2008, of a grievance concerning
> Plaintiff's incoming and outgoing mail) which grievance corresponds to
> Plaintiff's complaint in this civil action that "on June 23, 2008, Plaintiff saw Supt.
> Barone as wel[l] as Major Reed and still express[ed]  to him that he [i.e., Plaintiff]
> was still having [sic] problems with his mail" ECF No. 3 at 3, ¶ IV.C;  as well as
> Security Staff taking his legal work;
> (3) ECF No. 47-1 at 54 to 59 (grievance dated 7/9/2010 complaining of
> Defendants Riskus and Duncan for their falsely (according to Plaintiff) accusing
> Plaintiff in March 2009 of sexual assault against another inmate and the appeal to
> the Superintendent dated 7/26/2010 and appeal to Central Office dated 3/6/10)
> which grievance corresponds to Plaintiff's claim in this civil action that "Capt.
> Riskus use[d] some of his (CSI) Prisoners to set the Plaintiff up with a false
> Misconduct Report. . . ." ECF No. 3 at 4, ¶ 5.

Given that the record contradicts Plaintiff's assertion that all of his grievances concerning

the claims made herein went unanswered, no reasonable factfinder, on the basis of this record,

could find for Plaintiff.  See Cummings v. Crumb, 347 F.App'x 725, 727 (3d Cir. 2009)

("Cummings also argued that he was denied the grievance process because he was on grievance

restriction. According to the Pennsylvania Department of Corrections Grievance Policy DC-

ADM 804 Part IV.L, an inmate on grievance restriction is restricted to filing no more than one

grievance every 15 days. Thus, being on grievance restriction would not have prevented

Cummings from exhausting his remedies. In his objections to the Magistrate Judge's Report and

Recommendation, Cummings claimed that he tried to file a grievance but that it was never

returned to him. Cummings's changing and contradictory allegations do not excuse his failure to

exhaust his administrative remedies.");  Hopkins v. Apadaca,  C.A. No. 10–166E, 2011 WL

3882505, at *6 (W.D.Pa. Aug. 3, 2011) ("Plaintiff is arguing that administrative remedies were

made unavailable to him during these months, which prevented him from filing timely

grievances, presumably regarding Dr. Moll's alleged failure to provide treatment. This argument,

however, fails to withstand scrutiny. First, Plaintiff's grievance records reflect that Plaintiff did,

indeed, file grievances concerning other matters during the months of February and July 2009, in

contravention of Plaintiff's claim that he was unable to file grievances during those months.")

(footnote omitted), *report adopted by*, 2011 WL 3881025 (W.D.Pa.  Sept. 2, 2011).

### (4)   Plaintiff's own deposition testimony undermines the claimed interference with his attempts to exhaust.

Fourthly, in his deposition, when asked directly about what his claims were against

Defendant Kennedy, Plaintiff failed to say that she did not process his grievances.  See, e.g., ECF

No. 59-5 at 46 to 48.  The most that Plaintiff complains about is that Defendant Kennedy passed

information gained from Plaintiff's grievances along to her husband Defendant Mongelluzzo in

the Security Department and that she was slow in responding to his grievances.  See, e.g., Id., at

181, lines 10 to 12 ("it takes them two months to answer a grievance").

In light of the foregoing record evidence, there is no material issue of fact as to whether Plaintiff failed to exhaust his administrative remedies with respect to all but two of his claims. Therefore, the Moving Defendants are entitled to summary judgment based upon Plaintiff's failure to exhaust as to all of those claims that are redressable by DC-ADM 804 except for the claim that Defendant Reitz verbally harassed Plaintiff in early June of 2008 and except for the procedural due process claim against Defendant Reisinger.

Defendants also argued that Plaintiff failed to properly exhaust his administrative remedies, i.e., procedurally defaulted his claims, because he did not name (other than Defendant Reitz) any of the Defendants in the grievances filed under DC-ADM 804 that he did submit. Plaintiff argues that there is no such requirement under DC-ADM 804 that he do so.  ECF No. [61] at 2 to 3.  Plaintiff is incorrect.

The general rule is that in order to properly exhaust, a prisoner must name, in the initial grievance persons whom the prisoner has a complaint against and whom he eventually wishes to sue.  Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004).  Here, Plaintiff did not name any of the Defendants (other than Reitz), and so he has procedurally defaulted his claims against them. See, e.g., Spruill v. Gillis, 372 F.3d at 234;  Williams v. Pennsylvania, Dep't of Corrections, 146 F.App'x 554, 557 (3d Cir.2005) ("his [i.e., the prisoner's] failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."); Buehl v. Beard, Civ. A.  No. 03-1313, 2007 WL 1830616  (W.D.Pa. June 25, 2007) .[6]

---

[6]  For the reasons stated in Buehl, the Supreme Court decision in Jones v. Bock, 549 U.S. 199 (2007), which held that the Michigan Department of Corrections rules, governing inmate grievances, did not require that the prisoner name individuals whom he eventually sued, is distinguishable from the present case because the Third Circuit Court of Appeals already has

(footnote continued)

**B. Verbal harassment does not violate the Eighth Amendment.**

The Moving Defendants also argue that the alleged harassment of making racist remarks, putting white pillow cases over their heads and making KKK signs does not constitute an Eighth Amendment violation.  As disconcerting and unprofessional as the alleged conduct may be, Plaintiff has only alleged an Eighth Amendment claim regarding such conduct and such conduct does not rise to the level of the requisite serious objective actual deprivation.

Mere threats, even threats to a prisoner's life made by a guard do not satisfy the objective component of the Eighth Amendment.  Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (noting that among the actions "necessarily excluded from the cruel and unusual punishment inquiry ... are verbal threats and harassment."); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding that verbal threats and harassment do not state an Eighth Amendment claim), *amended by*, 135 F.3d 1318 (9th Cir. 1998); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987) ("alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation."); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (stating that it trivializes the Eighth Amendment to believe a threat constitutes a constitutional wrong.); Williams v. Gobles, 211 F.3d 1271 (Table), 2000 WL 571936, at *1 (6th Cir. 2000) ("Williams's claim against Defendant Gobles fails to state an Eighth Amendment claim because neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment. Even

---

held in Spruill v. Gillis, that the Pennsylvania Department of Corrections rules, governing inmate grievances, does require such.  The Jones court specifically contemplated that this would be the case, i.e., various states' rules would yield various outcomes. Jones, 549 U.S. at 205 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.").

the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.") (some citations omitted); <u>Pride v. Holden</u>, 1 F.3d 1244 (Table), 1993 WL 299328, at *2 (7th Cir. 1993) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.").

This is apparently the rule in this Circuit.  <u>See</u>, <u>e.g.</u>, <u>Green v. Dept. of Corrections</u>, 393 F.App'x 20, 24 n.2 (3d Cir. 2010) ("acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment") (quoting <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)); <u>Mimms v. U.N.I.C.O.R.</u>, 386 F.App'x 32, (3d Cir. 2010) ("Verbal harassment of a prisoner, without more, does not violate the Eighth Amendment."); <u>Ayala v. Terhune</u>, 195 F.App'x 87, 92 (3d Cir. 2006) ("Ayala's allegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983.").  Plaintiff has cited no controlling legal authority to the contrary.   He has cited dicta from a concurring opinion by Justice Blackmun in <u>Hudson v. McMillian</u>, 503 U.S. 995  (1992) and <u>Freitas v. Ault</u>, 109 F.3d 1335, 1338 (8th Cir. 1997), a case regarding sexual harassment. ECF No. [61] at 3 to 4.  We find neither of these cases requires this Court to find that the kind of verbal threats and harassment recounted in the Complaint establishes a violation of the Eighth Amendment.  Hence, any claim under the Eighth Amendment, based on verbal threats/harassment made by some of the Moving Defendants, fails to state a claim and the Moving Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim, including Plaintiff's claim against Defendant Reitz for verbal harassment allegedly occurring in early June 2008 (<u>i.e.</u>, the only claim by Plaintiff which the Defendants concede was properly exhausted via DC-ADM 804).

**C.  Plaintiff's Fourteenth Amendment Procedural Due Process Rights were not violated.**

Next, Plaintiff claims that his procedural due process rights were violated because in the course of the disciplinary hearing, he was not afforded the opportunity to present witnesses in his defense.  Plaintiff complains that he was not able to do so because he was not provided a form for requesting witnesses.  He explains that "[t]his form was never provided to plaintiff when he was served with his misconduct which is a requirement.  Without the form plaintiff was unable to comply with the proper procedure set forth in DC-ADM 801.  Because plaintiff was never provided with the appropriate form to request his witnesses, plaintiff was denied his right to call witnesses."  ECF No. 61 at 5.

Initially, we note that Plaintiff's statement contradicts the contemporaneously created documentary evidence of record.  ECF No. 59-3 at 2 (Misconduct Report form which has a check mark next to the box indicating that among the forms given to Plaintiff was a "Request for Witnesses and Representation").  Moreover, in Plaintiff's written appeal to the Program Review Committee ("PRC") of the misconduct hearing examiner's finding him guilty, Plaintiff never raised the allegation that he did not receive the form for requesting witnesses.  ECF No. 59-3 at 4.

Regardless of whether Plaintiff received the witness request form or not and whether Defendant Reisinger permitted Plaintiff to have his witness, we find that Plaintiff fails to establish a procedural due process violation under the requisite two step analysis.

Conducting a procedural due process analysis involves a two-step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements.

Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).   Plaintiff has adduced no evidence, as is his

burden, with respect to the factors announced in Sandin v. Conner, 515 U.S. 472 (1995) which

governs how a state prisoner may establish the existence of a liberty interest.   Zigmund v. Foster,

106 F.Supp.2d 352, 360 (D. Conn. 2000) ("The plaintiff bears the burden of demonstrating the

existence and infringement of a protected liberty or property interest.").   It is indeed Plaintiff's

burden to adduce evidence that the conditions he faced while in disciplinary custody were both

atypical and significant hardships in relation to the ordinary incidents of prison life so as to

establish that he was deprived of a liberty interest.   Frazier v. Coughlin, 81 F.3d 313, 317 (2d

Cir. 1996) ("To prevail, Frazier must establish . . . that the confinement or restraint creates an

'atypical and significant hardship' under *Sandin*"); Keel v. Dovey, 459 F.Supp.2d 946, 955

(C.D.Cal. 2006)("Plaintiff has failed to carry her burden of raising a triable issue of material fact

on whether her placement in Ad Seg qualifies as an 'atypical and significant hardship[ ]... when

compared to the burdens of ordinary prison life'") (some internal quotation marks omitted).

Accord Wilkins v. Bittenbender, __ F.App'x __, 2007 WL 708993 at *2 (3d Cir. 2007) ("Nor has

he [i.e., the prisoner-plaintiff] provided any evidence that the conditions during his stay in

administrative segregation involved atypical or significant hardship.").   Accordingly, for the

reason that Plaintiff fails to establish the deprivation of a liberty interest under Sandin, the

Moving Defendants would be entitled to summary judgment as to Plaintiff's claim of being

denied procedural due process.[7]

---

[7] We acknowledge that the Moving Defendants did not raise this issue as a basis for their
summary judgment motion.  Nevertheless, Courts may enter summary judgment *sua sponte*.
Celotex, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely
acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the
losing party was on notice that she had to come forward with all of her evidence.").  This order
will provide the requisite notice to Plaintiff and he may file a motion for reconsideration in
(footnote continued)

### D.  Plaintiff's First Amendment Claims

Plaintiff makes a First Amendment denial of access to courts claim.  ECF No. [61] at 6. The Defendants noted that at the relevant time of alleged interference, Plaintiff had no pending court case, nor an intended court case, and thus could not be denied access to courts.  Plaintiff counters that some of his grievances were never processed by Defendant Kennedy and this failure to process grievances constitutes a denial of access to courts.  Id.

First, as set forth above, we find that there is insufficient evidence of record to establish that Defendant Kennedy interfered with or refused to process Plaintiff's grievances.  Secondly, even if there were such evidence that Defendant Kennedy refused to process Plaintiff's grievances, the Court understands Plaintiff to be asserting that Defendant Kennedy's alleged denying him grievances or interfering with his grievances violated his right to petition the government.  Plaintiff is simply mistaken.  Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)(per curiam)("the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.");  Wilson v. Horn, 971 F.Supp. 943, 947 (E.D. Pa. 1997) (where prisoner sued DOC officials for failing to respond to his grievances, the court held that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal

---

response to this order and attach thereto, any evidence that would establish the deprivation of a liberty interest under Sandin and the court will consider such evidence as if he filed it in response to a summary judgment motion rather than under the more limited standard typically applied to motions for reconsideration.  Cf. J.D. Fields & Co., Inc. v. U.S. Steel Intern., Inc., 426 F.App'x 271, 281 (5th Cir. 2011) ("We have held that the district court can 'rectif[ ]y [its] initial procedural error' in not giving notice before granting summary judgment 'by ruling on a motion for reconsideration.' Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 402 (5th Cir. 1998). That is, if the party opposing the motion for summary judgment 'is afforded an opportunity ... to present the court with evidence supporting [its] arguments' in a motion for reconsideration, 'the court's failure to provide an opportunity to respond is harmless error.' Id.").

constitutional rights. Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised by the failure of the prison to address his grievances."), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (Table).[8]

Given the foregoing, Moving Defendants are entitled to summary judgment as to all of Plaintiff's First Amendment claims.

### E.  The Fifth Amendment does not apply herein.

As to Plaintiff's Fifth Amendment claim, it should be dismissed.  The Fifth Amendment provides in full that:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in

---

[8]  To the extent that Plaintiff makes a First Amendment retaliation claim, the Court relies upon Plaintiff's failure to exhaust this claim as the basis for granting summary judgment as to the Moving Defendants.  To the extent that Plaintiff did exhaust his retaliation claim against Defendant Reitz concerning Reitz's alleged actions in early June 2008, namely verbally threatening Plaintiff to send him to J-Unit and threatening Plaintiff that he will put a notation on Plaintiff's block card that Plaintiff took soup from another inmate, we do not find those verbal threats to be sufficiently adverse so as to deter a prisoner of ordinary firmness from engaging in protected activities.  Alexander v. Forr, No. 04–370, 2006 WL 2796412, at *4 (M.D.Pa. Sept.27, 2006) ("Verbal abuse or threats do not constitute the type of adverse action sufficient to support a retaliation claim."), *aff'd*, 297 F.App'x 102 (3d Cir. 2008); Bartelli v. Bleich, No. 04–0899, 2005 WL 2347235, at *3 (M.D.Pa. Sept.26, 2005) ("[M]ere verbal threats cannot be viewed as an 'adverse action' sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."); Gay v. City of Phila., No. 03–5358, 2005 WL 1844407, at *5 (E.D.Pa. Aug. 2, 2005) ("[I]t is well established that verbal abuse or threats alone do not state a constitutional claim."). *aff'd*, 205 F.App'x 931 (3d Cir. 2006).  To the extent that Plaintiff claims the filing of the misconduct charge accusing him of sexual assault was done in retaliation, because Plaintiff was found guilty of the misconduct, he cannot succeed on a retaliation claim based upon the misconduct.  Vercheres v. Wilkinson, 194 F.3d 1315 (Table), 1999 WL 801542, at *1 (6th Cir. 1999)  ("Thus, Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."); Harris-Debardelaben v. Johnson, 121 F.3d 708 (Table), 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (being found guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim.").

the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

None of the provisions of the Fifth Amendment appear to be implicated by Plaintiff's complaint, except for the due process provision.  However, the Fifth Amendment's due process clause only protects against federal governmental action.  See Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials.");  Wrinkles v. Davis, 311 F.Supp.2d 735, 738 (N.D.Ind. 2004) ("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials.").  All the Defendants named herein, are state, not federal actors and hence the Fifth Amendment is inapplicable.  Accordingly, the Moving Defendants are entitled to summary judgment on Plaintiff's Fifth Amendment claims.

The Moving Defendants are entitled to have Summary Judgment entered in their favor as to all of Plaintiff's claims.  All other pending motions are hereby denied as moot.


/s/  Maureen P. Kelly
United States Magistrate Judge


Date:   January 27, 2012

cc:

MARTY DECARLOS DUNBAR
CM-9649
SCI FOREST
PO BOX 945
MARIENVILLE, PA 16239

All Counsel of Record via CM-ECF